IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KIMBERLY RICHARDS**                                                              **PLAINTIFF**

v.                                                                    CAUSE NO. 1:15CV7-LG-RHW

**MARK GIBSON; HL & C JACKSON, LLC; and
TOWER LOAN OF MISSISSIPPI, LLC**                                 **DEFENDANTS**

### ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION

BEFORE THE COURT is the [3] Motion to Compel Arbitration and Stay Proceedings Pending Arbitration filed by Defendant Tower Loan of Mississippi, LLC. The Plaintiff entered into a residential loan agreement with Tower Loan. In her complaint, Plaintiff brings numerous state and federal claims regarding the handling of her loan and ultimate foreclosure. Tower seeks to enforce the alternate dispute resolution provisions of the loan agreement and to compel resolution of Plaintiff's claims through arbitration. Having considered the submissions of the parties and the applicable law, the Court is of the opinion that the arbitration agreement is unenforceable.

### BACKGROUND

Plaintiff Richards originally sued Defendants Tower, Mark Gibson, and HL & C Jackson, LLC, in the Circuit Court of Jackson County, Mississippi. After Richards amended her Complaint to state federal claims against the defendants, Tower, with the consent of the co-defendants, removed the action to this Court. After doing so, Tower filed the present Motion.

On November 17, 2008, Tower made a residential loan to Richards secured by

a mortgage on Richards' home. (*See* Am. Compl. 2 (¶¶ 8-9), ECF No. 3-2). According to the allegations of her First Amended Complaint, Richards refinanced the loan with Tower several times, which refinances were secured by the original home mortgage and also by other property. (*See id.* at 3 (¶¶ 10-12)). The final refinance agreement, which is the subject of this action, was in the amount of $96,600.00 and took place on January 9, 2012. (*See id.* (¶12)).

Richards alleges that when it became hard for her to continue making her monthly payments to Tower, she contacted Tower about a loan modification, which Tower refused. (*See id.* at 5 (¶29)). She claims that Tower told her that it "was going to foreclose on her home[,]" and that this was "seemingly in retaliation for merely asking about a loan modification. . . ." (*See id.* (¶30)). She contends that a Tower employee then referred her to Gibson,[1] who "told Richards he could help." *(See id.* at 5-6 (¶¶ 35-43)).

Richards states that Gibson told her "that in order to avoid the foreclosure [she] would have to sign an assumption warranty deed whereby [Gibson] obtained title to Richards' home." (*See id.* at 6 (¶48)). She also states that Gibson "assured her that he did not want her home[, but] stated he only wanted the money he paid to Tower Loan for her mortgage." (*See id.*). Richards thus transferred title to her home to Gibson and/or HL & C and began making monthly payments to Gibson at his request. However, Tower foreclosed a few months later and purchased Richards'

---

[1] Richards alleges that "Gibson is the president, owner and sole shareholder of HL & C." (Am. Compl. 2 (¶5), ECF No. 3-2).

home at the foreclosure sale.  (*See id.* at 7 (¶¶ 49-55)).

Richards contends that the January 2012 loan from Tower violates provisions of the Truth in Lending Act (TILA) and Home Ownership and Equity Protection Act (HOEPA) and that the defendants induced her "into a foreclosure rescue scam." (*See id.* (¶57)).  She includes the following Counts against the defendants in her First Amended Complaint: accounting, equitable mortgage, fraud, tortious breach of contract, breach of fiduciary duty, usury, violations of TILA/HOEPA, and negligence.  Tower has moved to compel arbitration of all claims based on the Arbitration Agreement provision contained in Richards' January 2012 refinance of her mortgage loan with Tower.

## DISCUSSION

The Federal Arbitration Act (FAA) provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Fifth Circuit has adopted a two-step inquiry for determining whether a party should be compelled to arbitrate a dispute.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  First, the Court must determine whether the parties agreed to arbitrate the dispute.  *See id.*  If that question is "answered in the affirmative, [the] Court then asks whether any federal statute or policy renders the claims nonarbitrable." *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (citation and quotation marks omitted).

The United States Supreme Court has made clear that "[l]ike any statutory

directive, the [FAA]'s mandate may be overridden by a contrary congressional command." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227 (citation, quotation marks, and brackets omitted). "'The relevant inquiry remains whether Congress precluded arbitration or other nonjudicial resolution of claims.'" *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 360 (5th Cir. 2013) (citation, brackets, and ellipses omitted). "When considering whether a contrary congressional command is present, courts must remember 'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (citation omitted). "The party opposing arbitration bears the burden of showing whether a congressional command exists." *Id.* "Any doubts are resolved in favor or arbitration." *Id.*

It is undisputed that the loan documents contain an arbitration provision. In fact, both Richards and Tower attached the Agreement to their filings with this Court. *See Jones*, 583 F.3d at 234; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (even if the Court determines that the parties agreed to arbitrate, it must then "determine if any legal constraints foreclose arbitration"). However, Richards contends that she cannot be compelled to arbitrate the claims against Tower in this action because federal statutes explicitly render such claims non-

4

arbitrable.

Specifically, Richards argues that the Arbitration Agreement is unenforceable under the Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, July 21, 2010, 124 Stat 1376.  The Dodd-Frank Act "imposes, among its many initiatives, the refinement and restriction of what has been restated by the Supreme Court as a 'national policy favoring arbitration of claims that parties contract to settle in that manner.'" *Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225, 226 (D. Mass. 2011) (quoting *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)); *see also Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1077 (D. Colo. 2013) ("The Dodd-Frank Act imposes . . . the refinement and restriction of the FAA's policy favoring arbitration of claims.") (citation and quotation marks omitted).  The provision of the Act upon which Richard relies states, in pertinent part:

> No residential mortgage loan . . . secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

15 U.S.C. § 1639c(e).

Richards sole argument is that according to the text of § 1639c(e) it is clear that Congress intended to prohibit waiver of a judicial forum for the claims at issue and the statute "prohibits Tower from forcing Richards to arbitrate her claims." (Pl's. Mem. 4, ECF No. 9).  Courts that have had occasion to consider 15 U.S.C. § 1639c(e) have done so in the context of whether that provision applies retroactively.

*See Weller*, 971 F. Supp. 2d at 1077-79; *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E. 2d 372, 379-86 (W. Va. 2013). In both cases, the court decided that § 1639c could not be applied retroactively to arbitration agreements entered into before the Dodd-Frank Act became effective in 2010. *See Weller*, 971 F. Supp. 2d at 1079; *Ocwen*, 752 S.E. 2d at 386. Thus, neither court reached the issue currently before this Court. The subject loan was executed in 2012, after the Dodd-Frank Act became effective, so retroactivity is not an issue.[2] Tower does not address § 1639c(e) in its Motion to compel arbitration or in the supporting memorandum brief. Neither has Tower responded to Richards' argument concerning the effect of § 1639c(e) on the arbitration agreement here. Therefore, the Court must determine whether Richards has carried her burden to show that Congress intended § 1639c to preclude arbitration of the claims in this action. *See D.R. Horton*, 737 F.3d at 360.

As recognized by the Fifth Circuit, "[t]he task of statutory interpretation begins and, if possible, ends with the language of the statute." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "An express statutory exclusion of pre-dispute arbitration undoubtedly constitutes a clear

---

[2] Even so, "[a] refinancing is a new transaction requiring new disclosures to the consumer." 12 C.F.R. § 226.20. Further, Tower does not dispute that the subject loan was entered into in 2012, and has attached parts of that loan to its Motion.

6

congressional command." *Jackson v. Home Team Pest Defense, Inc.*, 2013 WL 6051391, at *8 (M.D. Fla. Nov. 15, 2013); *see also Stewart v. Doral Fin. Corp.*, 997 F. Supp. 2d 129, 139-40 (D.P.R. 2014) (interpreting another provision of the Dodd-Frank Act and finding that the provision's prohibition of pre-dispute arbitration agreements precluded arbitration) (denying motion to compel arbitration).

In analyzing the text of § 1639c, the Court is cognizant of the federal policy favoring arbitration and of the mandate to resolve doubts in favor of arbitration. Even so, the Court agrees that the language of § 1639c(e) "leaves no doubt with respect to one type of arbitration agreement as it explicitly bars the use of pre-dispute arbitration in consumer mortgages." *See* Alan. S. Kaplinsky, Mark J. Levin, Martin C. Bryce, Jr., *Arbitration Developments: Has the Supreme Court Finally Stepped In?*, 66 Bus. Law. 529, 538 (2011); *see also, e.g.*, Todd Zywicki, *The Consumer Financial Protection Bureau: Savior or Menace?*, 81 Geo. Wash. L. Rev. 856, 907 (2013) (recognizing that "Dodd-Frank bans mandatory arbitration provisions in mortgage and home equity loan contracts").[3] Since there is no dispute that Richards' loan with Tower was a residential mortgage loan secured by her principal dwelling and that all of her claims arise out of that transaction, the Court finds that 15 U.S.C. § 1639c(e) prohibits mandatory arbitration of the claims in this

---

[3] *See also* Loan Originator Compensation Requirements Under the Truth in Lending Act (Regulation Z), 78 FR 11280-01. Dodd-Frank Act section 1414(a) amended TILA to add new section 129C(e), 15 U.S.C. 1639c(e). That section restricts mandatory arbitration agreements in residential mortgage loans and extensions of open-end credit secured by the consumer's principal dwelling. It also prohibits provisions of these loans and related agreements from being applied or interpreted to bar a consumer from bringing a Federal claim in court.

action.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [3] Motion to Compel Arbitration and Stay Proceedings Pending Arbitration filed by Defendant Tower Loan of Mississippi, LLC, is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 29th day of January, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE