IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KIMBERLY RICHARDS**                                                  **PLAINTIFF**

v.                                                                    CAUSE NO. 1:15CV7-LG-RHW

**MARK GIBSON; HL & C JACKSON, LLC; and**
**TOWER LOAN OF MISSISSIPPI, LLC**                             **DEFENDANTS**

## ORDER GRANTING MOTION TO ALTER OR AMEND AND GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

BEFORE THE COURT is the [14] Motion to Alter or Amend Order Denying Motion to Compel Arbitration and Stay Proceedings filed by Defendant Tower Loan of Mississippi, LLC.  Having considered the Motion and the applicable law, the Court is of the opinion that the Motion should be granted.  As set forth herein, the Court is of the opinion that Richards must submit her claims against Tower to arbitration.

### BACKGROUND

Plaintiff Richards originally sued Defendants Tower, Mark Gibson, and HL & C Jackson, LLC, in the Circuit Court of Jackson County, Mississippi. After Richards amended her Complaint to state federal claims against the defendants, Tower, with the consent of the co-defendants, removed the action to this Court. After doing so, Tower filed the present Motion.  On November 17, 2008, Tower made a residential loan to Richards secured by a mortgage on Richards' home. (See Am. Compl. 2 (¶¶ 8-9), ECF No. 3-2).  According to the allegations of her First Amended Complaint, Richards refinanced the loan with Tower several times, which

refinances were secured by the original home mortgage and also by other property. (See id. at 3 (¶¶ 10-12)). The final refinance agreement, which is the subject of this action, was in the amount of $96,600.00 and took place on January 9, 2012. (See id. (¶12)).

Richards alleges that when it became hard for her to continue making her monthly payments to Tower, she contacted Tower about a loan modification, which Tower refused. (See id. at 5 (¶29)). She claims that Tower told her that it "was going to foreclose on her home[,]" and that this was "seemingly in retaliation for merely asking about a loan modification. . . ." (See id. (¶30)). She contends that a Tower employee then referred her to Gibson,[1] who "told Richards he could help." (See id. at 5-6 (¶¶ 35-43)). Richards states that Gibson told her "that in order to avoid the foreclosure [she] would have to sign an assumption warranty deed whereby [Gibson] obtained title to Richards' home." (See id. at 6 (¶48)). She also states that Gibson "assured her that he did not want her home[, but] stated he only wanted the money he paid to Tower Loan for her mortgage." (See id.). Richards thus transferred title to her home to Gibson and/or HL & C and began making monthly payments to Gibson at his request. However, Tower foreclosed a few months later and purchased Richards' home at the foreclosure sale. (See id. at 7 (¶¶ 49-55)).

Richards contends that the January 2012 loan from Tower violates provisions of the Truth in Lending Act (TILA) and Home Ownership and Equity Protection Act

---

[1] Richards alleges that "Gibson is the president, owner and sole shareholder of HL & C." (Am. Compl. 2 (¶5), ECF No. 3-2).

(HOEPA) and that the defendants induced her "into a foreclosure rescue scam." (See id. (¶57)). She includes the following Counts against the defendants in her First Amended Complaint: accounting, equitable mortgage, fraud, tortious breach of contract, breach of fiduciary duty, usury, violations of TILA/HOEPA, and negligence. Tower has moved to compel arbitration of all claims based on the Arbitration Agreement provision contained in Richards' January 2012 refinance of her mortgage loan with Tower.

On January 29, 2015, the Court denied a Motion to Compel Arbitration and Stay Proceedings Pending Arbitration filed by Defendant Tower Loan of Mississippi, LLC. The next day, Tower Loan filed the subject Motion, arguing (1) that the Court denied it an opportunity to file a reply, and (2) that the controlling provisions of the Dodd-Frank Act did not go into effect until 2013 – after the date of the subject loan – and, thus, does not prohibit arbitration in this action.

## DISCUSSION

"[A]ny order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims . . . ." Fed. R. Civ. P. 54(b). When the Court "rules on an interlocutory order, it is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or any intervening change in or clarification of the substantive law. *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210 (5th Cir. 2010) (citation and quotation marks omitted). Thus, the Court may revise a decision on a ground raised for the first time in a reconsideration motion with respect to an

3

interlocutory order. *See In re Elevating Boats LLC*, 286 F. App'x 118, 122 (5th Cir. 2008). The Court's decision to do so is reviewed for abuse of discretion only. *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

The Federal Arbitration Act (FAA) provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Fifth Circuit has adopted a two-step inquiry for determining whether a party should be compelled to arbitrate a dispute. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, the Court must determine whether the parties agreed to arbitrate the dispute. *See id.* This step has two components: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute between the parties falls within the scope of the arbitration agreement." *See id.*

"If both questions [of the first step] are answered in the affirmative, [the] Court then asks whether any federal statute or policy renders the claims nonarbitrable." *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (citation and quotation marks omitted). The United States Supreme Court has made clear that "[l]ike any statutory directive, the [FAA]'s mandate may be overridden by a contrary congressional command." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the

statute's underlying purposes." *Id.* at 227 (citation, quotation marks, and brackets omitted). "'The relevant inquiry remains whether Congress precluded arbitration or other nonjudicial resolution of claims.'" *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 360 (5th Cir. 2013) (citation, brackets, and ellipses omitted).

"When considering whether a contrary congressional command is present, courts must remember 'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (citation omitted). "The party opposing arbitration bears the burden of showing whether a congressional command exists." *Id.* "Any doubts are resolved in favor or arbitration." *Id.*

**(1)    Did Richards and Tower Agree to Arbitrate?**

The Court had no reason to address this step in its previous Order. However it is undisputed that the loan documents contain an Arbitration Agreement, which both Richards and Tower attached to their filings with this Court. By its terms, the Arbitration Agreement covers all claims and disputes between Richards and Tower, including both contractual and tort claims, all claims or disputes based on federal or state laws or regulations, disputes arising out of or relating to foreclosure, and all claims and disputes arising out of, in connection with, or relating to the subject loan. Thus, the language of the Agreement does appear to cover the claims against Tower in this action. Moreover, Richards has never argued that she did not agree to arbitrate the dispute or that the claims at issue are not covered by the language of the Agreement. The Court is therefore of the opinion that there is an agreement

between Richards and Tower to arbitrate the claims against Tower in this action. *See, e.g.*, *Anglin v. Tower Loan of Miss., Inc.*, 635 F. Supp. 2d 523, 527-28 (S.D. Miss. 2009).

### (2) Is There Any Federal Statute or Policy That Renders the Claims Non-Arbitrable?

The Court's finding that Richards and Tower agreed to arbitrate does not end the inquiry. *See Jones*, 583 F.3d at 234; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (even if the Court determines that the parties agreed to arbitrate, it must then "determine if any legal constraints foreclose arbitration"). In its previous Order, the Court held that the Arbitration Agreement was unenforceable under the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010). (*See* Order 5-8, ECF No. 12). In particular, 15 U.S.C. § 1639c(e)[2] is explicit that pre-dispute arbitration clauses in residential mortgage loans, like the one at issue, are unenforceable. (*See id.*).

Tower does not dispute the Court's interpretation of § 1639c(e) as barring pre-dispute arbitration clauses in residential mortgage loans. Tower's sole argument is that § 1639c(e) is inapplicable to the loan between Richards and Tower because that loan was entered into in 2012, and § 1639c(e) did not go into effect until 2013, not in 2010 as the Court previously held.

---

[2] "No residential mortgage loan . . . secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction."

The Court has reviewed the authority cited by Tower in its Motion and is persuaded that § 1639c(e) did not take effect until June 1, 2013. Although the Act itself was enacted in 2010, certain provisions of the Act did not take effect until the "date on which the final regulations implementing such . . . provision" took effect. 124 Stat. at 2136; *see also Fowler v. U.S. Bank, Nat'l Ass'n*, 2 F. Supp. 3d 965, 976 (S.D. Tex. 2014). The rule-making authority for § 1639c was transferred to the Consumer Finance Protection Bureau in 2011. *See Fowler*, 2 F. Supp. 3d at 976. The Bureau thereafter issued the final regulation implementing § 1639c on January 20, 2013, to take effect on June 1, 2013. *See* 78 Fed. Reg. 11,387 (February 15, 2013).

As a result, the Court must determine whether § 1639c(e) may be applied retroactively to prohibit arbitration of the claims in this action. Richards cites to no authority, and the Court is not aware of any, to suggest that § 1639c(e) may be applied retroactively to the 2012 mortgage loan. *See Fowler*, 2 F. Supp. 3d at 977. "'The operative presumption, after all, is that Congress intends its laws to govern prospectively only.'" *Id.* (citing *Vartelas v. Holder*, 132 S. Ct. 1479, 1491 (2012)). "The essential inquiry in determining whether a statute applies retroactively is whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* (citation, quotation marks, and brackets omitted). In conducting this inquiry, the Court agrees with other district courts that have that have found that § 1639c(e) should not be applied retroactively. *See Weller v. HSBC*

7

*Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1077-79 (D. Colo. 2013); *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E. 2d 372, 379-86 (W. Va. 2013). Accordingly, the Court finds that § 1639c(e) does not render Richards' claims against Tower non-arbitrable.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [14] Motion to Alter or Amend Order Denying Motion to Compel Arbitration and Stay Proceedings filed by Defendant Tower Loan of Mississippi, LLC is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Court's Order [12] entered on January 12, 2015, is set aside. In accordance with this Order the parties shall submit Richards claims against Tower to arbitration as provided by the Arbitration Agreement. Any further proceedings against Tower are stayed pending arbitration.[3]

**SO ORDERED AND ADJUDGED** this the 4th day of February, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

---

[3] *See* FAA, 9 U.S.C. § 3. Generally, this provision "applies only to parties to the arbitration agreement." *See Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001).