IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KIMBERLY RICHARDS**                                                  **PLAINTIFF**

v.                                                     **CAUSE NO. 1:15CV7-LG-RHW**

**MARK GIBSON; HL & C JACKSON, LLC; and
TOWER LOAN OF MISSISSIPPI, LLC**                         **DEFENDANTS**

### ORDER DENYING PLAINTIFF'S MOTION TO ALTER AND AMEND ORDER AND FOR RECONSIDERATION

BEFORE THE COURT is the [22] Motion to Alter and Amend Order and For Reconsideration filed by Plaintiff Kimberly Richards. Defendant Tower Loan of Mississippi, LLC, filed a Response in Opposition to the Motion, and Richards filed a Reply. Having considered the parties' submissions and the applicable law, the Court is of the opinion that the Motion should be denied. Richards must submit her claims against Tower to arbitration.

The facts of this case were set out in the Court's Order entered in this action on February 4, 2015. (ECF No. 18). By Order dated January 29, 2015, the Court denied Tower's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration. The next day, Tower filed a Motion to Alter or Amend the Court's Order, arguing that the controlling provision of the Dodd-Frank Act did not go into effect until 2013 – after the date of the subject loan – and, thus, does not apply to prohibit arbitration in this action.

On February 2, 2015, the Court entered a Text Only Order requiring Richards to respond to Tower's Motion to Alter or Amend on or before February 9, 2015. Richards filed a Response in Opposition to the Motion on February 3, 2015.

After reviewing the submissions of the parties and the law, the Court granted the Motion to Alter or Amend and ordered that Richards must submit her claims against Tower to arbitration. Richards now asks the Court to reconsider that Order.

## DISCUSSION

Although Richards requests that the Court give "her the opportunity to brief issues belatedly raised by Tower[,]" (Mot. 1 (¶4), ECF No. 22), the Court already did so when it ordered Richards to respond to Tower's Motion. Richards' argument that she was prevented from briefing the issue of the effective date of the Dodd-Frank Act is unpursuasive. Even so, Richards has extensively briefed the issues for which she seeks Court review. (*See* Pl.'s Mem., ECF No. 23). The Court has also exhaustively reviewed the law in this area and is of the opinion that no additional briefing or oral argument is necessary.

Richards has never disputed that there is a 2012 agreement between she and Tower to arbitrate the claims against Tower in this action. (*See* Order 5-6, ECF No. 18); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). She makes three arguments in the present Motion: (1) that 15 U.S.C. § 1639c(e) was effective in 2010, not 2013; (2) that § 1639c(e) should be applied retroactively to the 2012 agreement in any event; and (3) that the arbitration agreement between she and Tower is unconscionable. The Court addresses each argument in turn below.

**(1)    Effective Date of Title XIV of the Dodd-Frank Act**

15 U.S.C. § 1639c(e), part of Title XIV of the Dodd-Frank Wall Street Reform

and Consumer Protection Act, states that "[n]o residential mortgage loan . . . secured by the principal dwelling of the consumer may include terms which require arbitration . . . as the method for resolving any controversy or settling any claims arising out of the transaction."  There has never been any dispute that the arbitration agreement at issue is part of a residential mortgage loan.  The parties dispute whether § 1639c(e) was effective in 2010 – thus rendering the 2012 agreement between the parties unenforceable – or 2013.[1]

The Dodd-Frank Act was enacted in 2010, but certain provisions of the Act did not take effect until the "date on which the final regulations implementing such . . . provision" took effect.  124 Stat. at 2136.  Richards argues that § 1639c(e) took effect in 2010, not 2013, because the later effective date "only applies to those portions of Title XIV that require administrative regulations to be implemented[,]" and § 1639c(e) "does not require any regulations to be promulgated."  (Pl.'s Mem. 3, ECF No. 23).  The Court thoroughly researched this very issue prior to entering its February 4 Order, and is persuaded by the express mandate of the Consumer Financial Protection Bureau (CFPB), the federal agency in charge of implementing Title XIV:

---

[1] Richards mentions multiple times that Tower did not raise the effective date of the Dodd-Frank Act when it moved to compel arbitration.  This is not a valid reason to grant Richards' Motion, as the Court is always free to review and revise a decision on a ground raised for the first time in a reconsideration motion with respect to an interlocutory order.  *See In re Elevating Boats LLC*, 286 F. App'x 118, 122 (5th Cir. 2008); *see also Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210 (5th Cir. 2010).

> The provisions on mandatory arbitration and waiver are contained in the Dodd-Frank Act. Absent action by the Bureau, they would take effect on January 21, 2013. The Bureau believes that it is necessary and appropriate to provide implementing language to facilitate compliance with the statute. At the same time, the Bureau recognizes the point made by several commenters regarding the importance of these consumer protections. **The fact that the Bureau is implementing the provisions by regulation does not require the Bureau to delay the provisions' effective date for an extended period, as the commenters may have assumed. Instead, the Bureau is providing an effective date of June 1, 2013.**

78 Fed. Reg. 11280, 11387 (emphasis added). Richards claims that 78 Fed. Reg. 11280 is inapplicable because it "does not even mention a 'designated transfer date' for Title XIV." (Pl's. Mem. 4, ECF No. 23). But it did not have to, since the CFPB was explicit on when the prohibition on mandatory arbitration found in § 1639c(e) became effective – in 2013, after the 2012 mortgage loan at issue in this action.

Finally, the Court is unpersuaded by Richards' argument that Tower improperly relied on 75 Fed. Reg. 57252, which Richards claims does not apply to Title XIV. 78 Fed. Reg. 11280, the Federal Register section on which the Court relied (and which Tower also cited), specifically applies to Title XIV.

    **(2)     Retroactive Application of § 1639c(e)**

Richards claims that retroactivity is not an issue because the Dodd-Frank Act was enacted before Richards filed her suit, and retroactivity is measured from the date of a statute's enactment. Taking Richards' argument to its logical conclusion, retroactivity would never be an issue for statutes with an effective date after their enactment date. This argument is one of semantics, not substance. *See*

*generally, e.g.*, *Vartelas v. Holder*, 132 S. Ct. 1479 (2012) (applying retroactivity analysis based on statute's effective date); *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) (discussing the retroactive application of the Civil Rights Act of 1991 based on its effective date).

Richards next contends that the Court should retroactively apply § 1639c(e) in any event.  None of the authority cited by Richards stands for the proposition that that section may be applied retroactively to the 2012 mortgage loan.  The Fifth Circuit has not yet had occasion to address the issue of the retroactivity of the Dodd-Frank Act.  *See Holmes v. Air Liquide USA, L.L.C.*, 498 F. App'x 405, 406 n.2 (5th Cir. 2012).  Regardless, "[t]he operative presumption . . . is that Congress intends its laws to govern prospectively only."  *Vartelas*, 132 S. Ct. at 1491.  "The essential inquiry . . . is whether the new provision attaches new legal consequences to events completed before its" effective date.  *See id.* (citation and quotation marks omitted).  "That is just what occurred here."  *Id.*  Moreover, the district courts that have considered the issue have found that § 1639c(e) should not be applied retroactively.  *See Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1077-79 (D. Colo. 2013); *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E. 2d 372, 379-86 (W. Va. 2013).

Richards argues that retroactive application of the statute "would not impair any rights Tower possessed (right to arbitration) because that right was eliminated by Congress" in 2010, and, thus, "Tower was aware of the arbitration ban as of" that

5

date. (Pl's. Mem. 5, ECF No. 23). This argument merely restates her previous argument that the statute became effective in 2010. A party's awareness of a statute's prohibition is not the test for whether the statute should be applied retroactively. If anything, Tower was well aware that it could rely on its arbitration agreement with customers until 2013, when the prohibition actually became effective. To apply the prohibition retroactively would no doubt impair Tower's contractual rights, as discussed in further detail below. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (discussing "the fundamental principle that arbitration is a matter of contract") (citation and quotation marks omitted).

Richards also argues that § 1639c(e) is merely jurisdictional. (Pl's. Mem. 5, ECF No. 23). It is true that courts "have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *See Landgraf*, 511 U.S. at 274. This is because "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *See id.* (citation omitted). However, Richards' same argument was made by the party opposing arbitration in *Weller*, and the Court rejects the argument for the same reason that court in *Weller* (and other courts) have rejected it.

In particular, not only is there a well-settled presumption against applying statutes retroactively, *see Landgraf*, 511 U.S. at 263-65, but also "arbitration is primarily a contractual matter governed by the law of contracts . . . ." *See Weller*,

971 F. Supp. 2d at 1079. Thus, the Court agrees with the numerous courts that "have concluded that the right to insist on arbitration is not just a matter of where the claims may be heard but a question of vested, contractual rights, which may not be retroactively withdrawn absent clear congressional intent to that effect[,]" which is lacking here. *See id.* "An arbitration agreement creates a right, one that under the [Federal Arbitration Act] is 'irrevocable.'" *Id.* (quoting 9 U.S.C. § 2). Furthermore, the Supreme Court has explicitly stated that "courts must place arbitration agreements on an equal footing with other contracts, . . . and enforce them according to their terms . . . ." *Concepcion*, 131 S. Ct. at 1745; *see also Weller*, 971 F. Supp. 2d at 1079. For all these reasons and those discussed previously, the Court finds that § 1639c(e) does not apply retroactively.

**(3) Unconscionability**

Finally, Richards argues that the arbitration agreement is unconscionable, both substantively and procedurally. Richards only made a passing footnote reference to unconscionability in her original brief. Regardless, the Court looks to Mississippi state law to determine whether the agreement is unconscionable. *See Hill*, 367 F.3d at 431.

**a. Procedural Unconscionability**

"Procedural unconsionability is established by showing a lack of knowledge, lack of voluntariness, inconspicious print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of

7

opportunity to study the contract and inquire about the contract terms." *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 609 (Miss. 2014) (citation and quotation marks omitted). Here, the print of the agreement was the same font as the rest of the loan documents. In addition, Richards signed the documents directly below a bold all capitalized statement that stated: "**ARBITRATION AGREEMENT: BY SIGNING BELOW AND OBTAINING THIS LOAN, BORROWER AGREES TO THE ARBITRATION AGREEMENT ON THE REVERSE SIDE OF THE AGREEMENT. YOU SHOULD READ IT CAREFULLY BEFORE YOU SIGN BELOW.**" (Loan Docs., ECF No. 22-1). The Court cannot conclude that the agreement contains inconspicious print. *See Smith*, 153 So. 3d at 609-10; *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000).

The one case Richards cites to argue that "the language in the arbitration provision is not easily understandable by the average citizen[,]" (Pl's. Mem. 7, ECF No. 23), did not deal with unconscionability, but, rather, whether the parties entered into an arbitration agreement in the first place. While the agreement "does contain some legalistic language, its keys terms relating to arbitration are unmistakeable" and gave Richards "substantial notice that she was agreeing to forego any right to judicial review." *See Smith*, 153 So. 3d at 610; *see also Horton*, 926 So. 2d at 178; *Forest Hill Nursing Ctr., Inc. v. McFarlan*, 995 So. 2d 775, 785 (Miss. Ct. App. 2008). The agreement is clear that, by signing, Richards is

foregoing the right to a jury trial.  It states that the parties

> understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

(Loan Docs., ECF No. 22-1).

Furthermore, while Richards contends that "[n]o one at Tower explained that she was giving up her right to a trial by a jury[,]" (Pl's. Mem. 6-7, ECF No. 23), she does not dispute that she signed the loan documents and could have read them.  *See Smith*, 153 So. 3d at 610; *see also Horton*, 926 So. 2d at 177-78.  Tower did not have an inherent duty to explain the terms of the agreement to her and "she cannot attribute [any] lack of knowledge to [Tower]'s failure to explain."  *See Horton*, 926 So. 2d at 177-78; *see also Nw. Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1194 (Miss. 2005).  Again, the loan documents themselves contained a bold, all capitalized admonition that Richards should read the arbitration agreement carefully before signing.  *See Smith*, 153 So. 3d at 610 (Mississippi law "imposes a duty on a contracting party to read what . . . she signs").  "Any reasonable person reading [the] loan documents prior to signing [them] would expect to be subject to arbitration and would know that they were waiving their right to a jury trial."  *See McDonald*, 905 So. 2d at 1194.  "There is also no evidence that a reasonable person would not sign this document in return for a desired loan."  *Id.*

"That leaves only the disparity in sophistication or bargaining power of the

9

parties as a potential factor in favor of procedural unconscionability." *Smith*, 153 So. 3d at 610. Richards' contention that "[a]t the time she signed the documents, [she] was struggling financially and needed solutions[,]" (Pl's. Mem. 6-7, ECF No. 23), is contradicted by her Complaint allegations. The loan at issue was signed in 2012, and Richards' allegations of financial trouble all relate to events in 2014. (*See generally* First Am. Compl., ECF No. 1-2).

But "[e]ven if [the Court] were to assume that [Tower] possesses an inherent advantage in sophistication and bargaining power over [Richards], that imbalance did not result in oppressive terms." *See Smith*, 153 So. 3d at 610. "This Court could hardly employ a rule which required the parties to every contract to be of exactly equal sophistication. One party or the other will always be more or less sophisticated in business matters than the other." *Horton*, 926 So. 2d at 179. "Here, however, there is no evidence in the record that [Richards] attempted to negotiate the terms of the arbitration agreement or have it removed." *Id.* And "[n]othing in the record indicates [that she] could not have obtained a loan with another financial institution, had she so desired." *Id.* Richards makes allegations about attempting to get a loan with Hancock Bank in 2014, but there are no similar allegations for any prior loans, including the 2012 loan. In short, Richards "has failed to demonstrate lack of sophistication sufficient to render the arbitration agreement unenforceable." *See id.*; *see also Kisner v. Bud's Mobile Homes*, 512 F. Supp. 2d 549, 556 (S.D. Miss. 2007).

### b. Substantive Unconscionability

"Substantive unconscionability is proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Smith*, 153 So. 3d at 607 (citation, quotation marks, and ellipses omitted). Richards claims that the arbitration agreement is one-sided because "Tower reserves five alternatives to resolving disputes with Richards . . . . Richards, on the other hand, gets one option: arbitration. Additionally, in the arbitration clause, Tower is not required to arbitrate matters under $5,000. In contrast, Richards is required to submit all claims to arbitration." (Pl's Mem. 8, ECF No. 23).

The Court agrees with the analysis of the district court in *Anglin v. Tower Loan of Mississippi, Inc.*, 635 F. Supp. 2d 523 (S.D. Miss. 2009), discussing the arbitration agreement challenged here,[2] that "[c]ontrary to plaintiff's urging, these provisions are not so 'lop-sided' as to render the agreement unconscionable and hence unenforceable." *See id.* at 530. Namely, "[t]he agreement does permit Tower to repossess or foreclose prior to arbitration, in recognition of the rights afforded it in its security agreement. However, the agreement further states that 'disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.'" *See id.* Moreover, "while the security agreement between the parties

---

[2] Richards claims "it is impossible to know if Richards' arbitration agreement is the same agreement ruled upon in *Anglin* . . . ." (Pl's Reply 3, ECF No. 26). However, the contract provisions cited by the *Anglin* court are the exact provisions Richards challenges here.

11

purports to authorize Tower to file suit for default in payment, its right to do so is limited by the arbitration agreement which provides that '[i]f either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision.'" *See id.*[3] (*See also* Loan Docs., ECF No. 22-1).

The primary case on which Richards relies for her argument of substantive unconscionability, *Caplin Enterprises, Inc. v. Arrington*, 145 So. 3d 608 (Miss. 2014), is distinguishable. There, the Mississippi Supreme Court concluded that the defendant's "arbitration clause and the limitation-of-liability clause, taken together, effectively deny the plaintiffs an adequate remedy against" the defendant. *See id.* at 616-17. It further found the arbitration clause unconscionable because it permitted defendant "to pursue judicial remedies while relegating the plaintiffs' claims to arbitration . . . ." *See id.* at 617; *see also Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 700 (2000). As discussed in *Anglin*, however, that is not the case here. Had Tower instituted suit against Richards, Richards could have compelled Tower to arbitrate, as Tower has admitted. The Court does not find the agreement's provision that Tower is not required to arbitrate matters under $5,000 to be so one-sided that it causes the agreement to be void as unconscionable.

---

[3] In *Anglin*, Tower admitted that "under this provision of the arbitration agreement, if it had commenced a collection action, plaintiff would have the right to insist on arbitration." 635 F. Supp. 2d at 530.

Richards' last argument is that the agreement "effectively exonerates Tower from all liability for its unlawful business practices under" the Truth in Lending Act (TILA) and Home Ownership and Equity Protection Act (HOEPA). (Pl's. Mem. 8, ECF No. 23). The Court is aware of no authority that would prohibit an arbitrator from adjudicating Richards' claims related to violations of TILA and/or HOEPA, especially where the agreement applies to "[a]ll claims or disputed based upon Federal or State laws or regulations . . . ." (Loan Docs., ECF No. 22-1).

## CONCLUSION

For the foregoing reasons, the Court finds that Richards' Motion is not well-taken and that Richards must submit her claims against Tower to arbitration.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [22] Motion to Alter and Amend Order and For Reconsideration filed by Plaintiff Kimberly Richards is **DENIED**. Richards' requests for additional briefing and oral argument are also **DENIED**. Richards is cautioned that the Court will not entertain any additional motions or briefing on these issues.

**SO ORDERED AND ADJUDGED** this the 4th day of March, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE